IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


WILLIE MUNN                                                                      PLAINTIFF


        v.                         Civil No. 4:08-cv-04075


LOUISE PHILLIPS, Jail Administrator,
Hempstead County Detention Facility;
JAN BUSH, Hempstead County
Detention Facility; and SHERIFF
JERRY CRANE, Hempstead County,
Arkansas                                                                        DEFENDANTS



**MEMORANDUM OPINION**

Plaintiff, Willie Munn, filed this action pursuant to 42 U.S.C. § 1983 on August 26, 2008.

He proceeds *pro se* and *in forma pauperis.* The case is before me pursuant to the consent of the

parties (Doc. 16).

Plaintiff contends the Defendants violated his constitutional rights by interfering with the

delivery of his mail. Specifically, he contends he mailed "legal papers" to an inmate incarcerated

at the Hempstead County Detention Facility and the mail was returned to him rather than being

delivered to the addressee.

Currently before me for decision is a Motion for Summary Judgment filed by the Defendants

(Doc. 66). Plaintiff responded to the motion (Doc. 71). Because further information was believed

to be necessary, a questionnaire was propounded to the Plaintiff (Doc. 74) by the Court. Plaintiff filed

a timely response to the questionnaire (Doc. 79).

## I. BACKGROUND

Plaintiff, Willie Munn (hereinafter Munn), was an inmate in the Arkansas Department of Correction (ADC), Grimes Unit, located in Newport, Arkansas, at all times pertinent to the complaint. *Plaintiff's Response* (Doc. 79)(hereinafter *Resp.*) at ¶ 1. On or about July 7, 2008, Munn sent a letter to Cofey Spincer, an inmate, at the Hempstead County Detention Facility (HCDF). *Resp.* at ¶ 2. The letter was returned to Munn at the ADC marked "legal mail not allowed." *Resp.* at ¶ 3.

Munn is not a licensed attorney. *Resp.* at ¶ 4. The envelope had Munn's return address at the ADC on it. *Id.* at ¶ 5. There is no indication on the front of the letter that it contained "legal" mail. *Defts' Ex.* A. However, Munn maintains that the envelope was marked legal mail on the back in accordance with the applicable ADC rule. Munn indicates the applicable ADC rule requires all legal mail to be sealed in the presence of a staff member and initialed by staff on the back of the envelope. *Resp.* at ¶ 6.

The HCDF has an inmate handbook. *Resp.* at ¶ 7(A). The handbook in the section on mail provides: "No correspondence is allowed between inmates from other Detention and/or Correction Facilities or between inmates within this facility unless authorized by the Detention Administrator." *Id.* at ¶ 7(B). Munn does not contend correspondence between him and Spincer had been authorized by HCDF personnel. *Id.* at ¶ 13. However, despite this provision, Munn states he has received letters from Melvin Jordan and James Turner, both HCDF inmates at the time he received the letters. *Id.* He states there was nothing on the correspondence from these inmates to indicate it had been authorized by the detention administrator. *Id.*

Munn contends a custom or policy of Hempstead County was the moving force behind the

violation of his constitutional rights. Specifically, he contends "they said that they have to approve" correspondence between inmates and if not, give an explanation as to why mail was not approved. *Resp.* at ¶ 9. He asserts that neither Louise Phillips, the jail administrator, or Jan Bush, the staff member who brought his letter to Phillips' attention, gave him any explanation for his mail being returned. *Id.* at ¶¶ 11-12. Further, he argues they cannot stop one inmate from helping another inmate with his case. *Id.* at ¶ 9.

## II. ARGUMENTS OF THE PARTIES

As noted above, Defendants have now filed a Motion for Summary Judgment (Doc. 66). They contend first that the mail sent by Munn to Spincer does not constitute "legal mail." Second, Defendants argue that a prohibition on correspondence between inmates of detention facilities is reasonably related to legitimate state interests in maintaining control of detention facilities. Defendants maintain they are therefore entitled to judgment in their favor as a matter of law.

Plaintiff argues that the prohibition between correspondence between inmates is in conflict with the constitutional rights of prisoners. Further, he argues the policy is enforced in an inconsistent manner and no explanation is given to the letter's author of the reason the mail was refused. Finally, he maintains he has a constitutional right to assist other inmates with their cases which includes sending them "legal mail."

## III. DISCUSSION

"Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence." *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001). "Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351

(2d Cir. 2003). "A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). "Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981).

Restrictions on this First Amendment right are valid "only if [they are (1)] reasonably related to legitimate penological interests,"such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved. *Turner v. Safely*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct. 1874, 1881-82, 104 L. Ed. 2d 459 (1989).

In *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009), the Eighth Circuit noted that:

> In *Procunier v. Martinez,* the Supreme Court held "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." 416 U.S. 396, 417, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds by, Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). As such, "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Id.* The Court approved a requirement that an inmate be notified of the rejection and have a reasonable opportunity to protest the decision, concluding such requirements "do not appear to be unduly burdensome." *Id.*

*Id.*

In  *Goff v. Nix*, 113 F.3d 887 (8th Cir. 1997), the Eighth Circuit was faced with a 1988

change in correspondence procedures made by the Iowa State Penitentiary. *Id.* at 888. In general, prisoners were prohibited from corresponding with inmates in other units. *Id.* However, there was a policy in place referred to as the "red star system" which allowed inmates to send legal correspondence to "jailhouse lawyers" in their unit. *Id.* Until 1988, inmates were also allowed to use the red star system to correspond with another inmate, whether a co-plaintiff or his jailhouse lawyer, who was transferred to another unit. *Id.* Beginning in 1988, the prohibition against inter-unit correspondence was enforced across the board with no exception for mail previously allowed under the "red star system." The second effect of the change was to preclude transferred jailhouse lawyers from returning legal documents they held to their owner. *Id.*

Two jailhouse lawyers, George Goff and Dudie Rose, challenged the change in policy to the more restrictive one. *Goff*, 113 F.3d at 889. They presented three arguments. Fist, they claimed that the prohibition of legal correspondence with prisoners in different units prevented inmates from maintaining an attorney-client relationship with a jailhouse lawyer who is transferred. *Id.* Second, they argued it barred them as co-plaintiffs from communicating with each other for the period of time they were housed in different units. *Id.* Finally, they challenged "ISP's failure to provide a means by which jailhouse lawyers who possess a client's documents and are then transferred may return the documents to their owner." *Id.* The district court held ISP's policy constitutionally defective in all three respects. *Id.* 890.

The Eighth Circuit reversed in part. First, it held that "[a] jailhouse lawyer has no independent right to provide legal advice but may assert the right on behalf of other inmates who are otherwise unable to obtain access to the courts." *Goff*, 113 F.3d at 890. In the case before it, there was "no finding . . . that the client inmates were unable to find new jailhouse lawyers or other means

of gaining access to the courts." *Id.*

Second, it held that since Goff and Rose were co-plaintiffs in a pending case and the policy restricted their communications when each was assigned to a different unit, that they had standing to contest the restrictions on co-plaintiff communications. *Goff*, 113 F.3d at 891. However, the Eighth Circuit then held the ban on inter-unit correspondence was permissible under the Constitution. *Id.*

Finally, the Eighth Circuit held that ISP's failure to provide a means by which jailhouse lawyers who possess a client's documents may return the documents did violate the Constitution. *Goff,* 113 F.3d at 892. The Eighth Circuit upheld the district court's ruling directing "ISP to send an official to the cell of a jailhouse lawyer shortly before he is transferred to ask what legal papers should remain, determine to whom they belong (by scanning them briefly), and ensure the return of the documents to their owner." *Id.* at 891-892.

Keeping these principles in mind, I conclude Defendants are entitled to judgment as a matter of law. First, the law clearly holds that Munn has no Constitutional right to serve as a "jailhouse lawyer" for inmates in other detention facilities. *Bear v. Kautzky*, 305 F.3d 802, 804 ( 8th Cir. 2002)(No constitutional right to provide legal assistance to other inmates.); *Goff,* 113 F.3d at 890 (same); *Gassler v. Rayl*, 862 F.2d 706, 707-08 (8th Circ. 1988)("[N]o right to be or to receive legal assistance from a jailhouse lawyer independent of the right of access to the court."). Munn's right of access to the court was not infringed in anyway. Further, the "right of access to the courts does not accrue to those [inmates] who assist in the preparation of that lawsuit." *Johnson v. Rodriquez*, 110 F.3d 299, 311 (5th Cir. 1997).

Second, the mail, whether identified on the back as legal mail or not, showed on the face of the envelope that it was from an ADC inmate to a HCDF inmate. The mail was clearly not legal mail entitled to some additional or heightened privilege. *See Wolff v. McDonnell,* 418 U.S. 539, 575-77, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)(mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence; *Cody v. Weber*, 256 F.3d 764, 767 (8th Cir. 2002)(legal papers and letters from his attorney); *Harrod v. Halford*, 773 F.2d 234, 236 (8th Cir. 1985)("the mere fact that a letter comes from a legal source is insufficient to indicate that it is confidential and requires special treatment."); *Jensen v. Klecker,* 648 F.2d 1179, 1182 (8th Cir.1981) ("Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."). *See also Shaw v. Murphy*, 532 U.S. 223, 121 S. Ct. 1475, 149 L. Ed. 2d 420 (2001)(Communications between inmates about legal matters are not entitled to greater constitutional protection than other communications. Inmate-to- inmate correspondence regarding legal matters received the same First Amendment protections as any other inmate-to-inmate communication).

Third, to the extent Munn argues the HCDF policy was not routinely followed, we find this argument without merit. The violation of prison regulations in itself does not give rise to a constitutional violation. *See Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir.2003) (no federal constitutional liberty interest in having prison officials follow prison regulations); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir.1997) (no § 1983 liability for violating prison policy). Moreover, we note that the exceptions to the policy Munn states exist all involved outgoing mail rather than incoming mail.

It has been held that "the myriad problems with incoming mail and contraband are well-

documented, and have formed a basis for mail restrictions." *Mckenzie v. Fabian*, 2009 WL 2982641,

*10 (D. Minn. 2009). In contrast, "[o]utgoing personal correspondence does not generally pose a

serious threat to prison order and security." *Thornburgh v. Abbott*, 490 U.S. 401, 411, 109 S. Ct.

1874, 104 L. Ed. 2d 459 (1989). For this reason, "a prisoner's personal outgoing mail is unrestricted

unless it falls into categories which present a threat to prison order and security, such as, but not

limited to, escape plans, plans related to ongoing criminal activity, and threats of blackmail or

extortion." *Leonard v. Nix*, 55 F.3d 270, 374 (8th Cir. 1995).

## IV. CONCLUSION

For the reasons stated, the Defendants' Motion for Summary Judgment (Doc. 66) will be

**GRANTED** and this case dismissed.

**DATED this 1st day of March 2010.**


/s/ Barry A. Bryant
BARRY A. BRYANT
U.S. MAGISTRATE JUDGE